## IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION

| | |
|---|---|
| LORI TENAN<br><br>　　Plaintiff/Counterclaim Defendant,<br><br>　　v.<br><br>STRATEGIQ COMMERCE, LLC<br><br>　　Defendant/Counterclaim Plaintiff. | Case No. 15-cv-05170<br><br>Judge John W. Darrah |

### DEFENDANT'S ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS TO PLAINTIFF'S COMPLAINT

Defendant/Counterclaim Plaintiff StrategIQ Commerce, LLC ("StrategIQ"), by and through its undersigned attorneys, hereby answers Plaintiff/Counterclaim Defendant Lori Tenan's ("Tenan") Complaint, and states its affirmative defenses and counterclaims, as follows:

### STRATEGIQ'S ANSWER TO TENAN'S COMPLAINT

#### Introduction

1.　　This action arises out of the breach of a written contract by Defendant Strategiq Commerce, LLC ("Defendant" or "SIQ") with its commission sales representative, Plaintiff Lori Tenan ("Plaintiff" or "Tenan"). Defendant has refused and failed to pay commissions due to Plaintiff under the contract, resulting in substantial losses to Plaintiff. As a result, Plaintiff seeks damages from Defendant, including treble damages and attorney's fees as provided by 820 ILCS 120 "Sales Representative Act."

**ANSWER:** StrategIQ denies the allegations set forth in Paragraph 1 of the Complaint.

#### The Parties, Jurisdiction, and Venue

2.　　At all times relevant hereto, Plaintiff was and is a California resident.

**ANSWER:** StrategIQ lacks knowledge sufficient to form a belief as to the truth of the allegation contained in Paragraph 2 of the Complaint.

3.　　SIQ is an Illinois corporation organized under the laws of the State of Illinois with its principal offices in Cook County, Illinois.

128820072.3

**ANSWER:** StrategIQ denies that it is a corporation, and affirmatively states that it is organized as a limited liability company. StrategIQ admits the remaining allegations set forth in Paragraph 3 of the Complaint.

4.      In April of 2013, Defendant SIQ changed its organizational structure from an LLC to a corporation organized under Illinois law, and changed its name from IntraVex to Strategiq Commerce, LLC.

**ANSWER:** StrategIQ admits that it changed its name from IntraVex to StrategIQ Commerce in or around April 2013. StrategIQ denies the remaining allegations set forth in Paragraph 4 of the Complaint.

5.      SIQ assumed all the rights, duties and obligations of its LLC predecessor IntraVex under the subject contract with Plaintiff.

**ANSWER:** StrategIQ admits the allegations set forth in Paragraph 5 of the Complaint.

6.      This Court has original jurisdiction under 28 U.S.C. § 1332(a) based on diversity of citizenship and the amount in controversy, which exceeds $75,000 exclusive of interest and costs.

**ANSWER:** Paragraph 6 of the Complaint contains legal conclusions to which no response is required. To the extent Tenan alleges that she has suffered damages which exceed $75,000 exclusive of interest and costs, StrategIQ denies the same.

7.      Venue is proper under 28 U.S.C. § 1391, because this is a district in which a substantial part of the events or omissions giving rise to the claim occurred. In addition, the parties expressly agreed in the subject contract that venue for any lawsuit arising out of the agreement would be filed in a court of competent jurisdiction in Cook County, State of Illinois.

**ANSWER:** The allegations of this paragraph purport to reference the "subject contract" presumably attached to Tenan's Complaint, and StrategIQ respectfully refers the Court to that document for the complete and accurate contents thereof, and denies any allegations purporting to describe that document which are inconsistent with the document or make legal conclusions with respect to the same. The remaining allegations of this paragraph contain legal conclusions

128820072.3

to which no response is required, and to the extent that a response is required, StrategIQ denies

the remaining allegations set forth in Paragraph 7.

**The Contract**

8.      In November 2012, Tenan and IntraVex, SIQ's predecessor, executed a contract. A true and correct copy of the entire contract with referenced Exhibits A, B, and C entitled "Amended Employment Agreement" is attached as Exhibit 1.

**ANSWER:** StrategIQ admits that Exhibit 1 is a true and correct copy of the "Amended

Employment Agreement," and its exhibits, and StrategIQ respectfully refers the Court to that

document for the complete and accurate contents thereof, and denies any allegations purporting

to describe that document which are inconsistent with the document.

9.      Expressly incorporated by reference as though set forth fully within the Amended Employment Agreement is the "Independent Contractor Sales Agreement," found at Exhibit C to Exhibit 1.

**ANSWER:** StrategIQ admits that Exhibit C to the Amended Employment Agreement is a

true and correct copy of the "Independent Contractor Sales Agreement" and StrategIQ

respectfully refers the Court to that document for the complete and accurate contents thereof, and

denies any allegations purporting to describe that document which are inconsistent with the

document.

10.      Tenan had the unilateral right to terminate the Amended Employment Agreement and implement the Independent Contractor Sales Agent Agreement.

**ANSWER:** Paragraph 10 of the Complaint references the Amended Employment

Agreement and the Independent Contractor Sales Agent Agreement attached as exhibits, and

StrategIQ respectfully refers the Court to those documents for the complete and accurate

contents thereof, and denies any allegations purporting to describe those documents which are

inconsistent with the document. To the extent this paragraph makes legal conclusions with

- 3 -

respect to those documents, no response is required. To the extent a further answer is required, StrategIQ denies the remaining allegations contained in Paragraph 10.

11.     On May 18, 2013, Tenan properly exercised that right by providing written notice to IntraVex that she was exercising her option to terminate the Amended Employment Agreement and implement the Independent Contractor Sales Agent Agreement. Tenan also provided IntraVex with a copy of the signed Independent Contractor Sales Agent Agreement.

**ANSWER:** Paragraph 11 of the Complaint contains legal conclusions to which no response is required. To the extent a further answer is required, StrategIQ admits that on or about May 18, 2013, Tenan provided a writing purporting to be a "notice," which document speaks for itself. Except as so admitted, StrategIQ denies the allegations of paragraph 11 of the Complaint.

12.     However, without good cause as expressly required by the Independent Contractor Sales Agent Agreement, and in material breach thereof, Defendant terminated the contract, and has through to the present time failed and refused to pay Tenan the commissions due to her thereunder.

**ANSWER:** Paragraph 12 of the Complaint contains legal conclusions to which no response is required. To the extent that a response is required, StrategIQ denies the allegations set forth in Paragraph 12.

13.     The Independent Contractor Sales Agreement is a valid and enforceable contract.

**ANSWER:** Paragraph 13 of the Complaint contains legal conclusions to which no response is required.

14.     The Independent Contractor Sales Agreement is governed by the law of the State of Illinois.

**ANSWER:** Paragraph 14 of the Complaint contains legal conclusions to which no response is required.

## COUNT I
## (Breach of Contract)

15.     Plaintiff incorporates by reference the allegations in paragraphs 1 through 14 as if fully set forth herein.

- 4 -

128820072.3

**ANSWER:** StrategIQ restates and realleges its responses to Paragraphs 1 through 14 above as if fully set forth herein.

16.   Plaintiff has acted in good faith and performed all of her obligations under the Independent Contractor Sales Agreement.

**ANSWER:** Paragraph 16 of the Complaint contains legal conclusions to which no response is required. To the extent that a response is required, StrategIQ denies the allegations set forth in Paragraph 16.

17.   Defendant has failed to faithfully and fully perform all of its obligations under the Independent Contractor Sales Agreement.

**ANSWER:** Paragraph 17 of the Complaint contains legal conclusions to which no response is required. To the extent that a response is required, StrategIQ denies the allegations set forth in Paragraph 17.

18.   Defendant has materially breached the terms of the Independent Contractor Sales Agreement by not paying commissions that are past due and payable to Plaintiff as of the time of the filing of this lawsuit.

**ANSWER:** Paragraph 18 of the Complaint contains legal conclusions to which no response is required. To the extent that a response is required, StrategIQ denies the allegations set forth in Paragraph 18.

19.   Furthermore, Defendant is contractually obligated to continue to pay to Plaintiff commissions on all revenues Defendant receives from Plaintiff's book of business and/or clients which Plaintiff obtained and/or contracted to do business with Defendant, which clients are retained by Defendant.

**ANSWER:** Paragraph 19 of the Complaint contains legal conclusions to which no response is required. To the extent that a response is required, StrategIQ denies the allegations set forth in Paragraph 19.

20.   Defendant has failed and continues to fail to pay Plaintiff the commissions owed to her and has stolen Plaintiff's book of business in refusing to honor its commission payment obligations.

**ANSWER:** StrategIQ denies the allegations set forth in Paragraph 20 of the Complaint.

21.     Plaintiff has suffered and will continue to suffer damages as a direct and proximate result of Defendants' breach of the Independent Contractor Sales Agreement.

**ANSWER:** Paragraph 21 of the Complaint contains legal conclusions to which no response is required. To the extent that a response is required, StrategIQ denies the allegations set forth in Paragraph 21.

22.     In addition to compensatory damages, Plaintiff seeks to recover all attorneys' fees, costs, and expenses in connection with the recovery of all amounts due, as identified in the Independent Contractor Sales Agreement.

**ANSWER:** StrategIQ denies Tenan is entitled to the relief set forth in Paragraph 22 of the Complaint.

WHEREFORE, Plaintiff respectfully requests that this Court:

a.     enter judgment in favor of Plaintiff and against Defendant;

b.     award Plaintiff compensatory damages, plus accrued interest;

c.     award Plaintiff her attorneys' fees, costs, and expenses as provided by contract; and

d.     award Plaintiff any other relief the Court deems just and equitable.

**ANSWER:** StrategIQ denies Tenan is entitled to the relief requested in this paragraph.

**COUNT II**
**(Violation of Illinois Sales Representative Act, 820 ILCS 120/0.01 et seq.)**

23.     Plaintiff repeats and re-alleges paragraphs 1-22 as if fully set forth herein.

**ANSWER:** StrategIQ restates and realleges its responses to Paragraphs 1 through 22 above as if fully set forth herein.

24.     At all times relevant herein, there was in effect the Illinois Sales Representative Act, 820 ILCS 120/0.01, et seq.

128820072.3

**ANSWER:** Paragraph 24 of the Complaint contains legal conclusions to which no response is required. To the extent that a response is required, StrategIQ denies the allegations set forth in Paragraph 24.

25. Plaintiff was a "sales representative" within the meaning of the Sales Representative Act, because she was a person who contracted with a principal to solicit orders and who was compensated, in whole or in part, by commission.

**ANSWER:** Paragraph 25 of the Complaint contains legal conclusions to which no response is required. To the extent that a response is required, StrategIQ denies the allegations set forth in Paragraph 25.

26. Defendant is a "principal" within the meaning of the Sales Representative Act because it is a corporation or other business entity which manufactures, produces, imports or distributes a product for sale; contracts with a sales representative to solicit orders for the product for sale; and compensates the sales representative in whole or in part by commission.

**ANSWER:** Paragraph 26 of the Complaint contains legal conclusions to which no response is required. To the extent that a response is required, StrategIQ denies the allegations set forth in Paragraph 26.

27. Plaintiff was entitled to "commission" from Defendant within the meaning of the Illinois Sales Representative Act, because she was to be paid in part by a percentage of the dollar amount of sales or profit paid by a client to Defendant.

**ANSWER:** Paragraph 27 of the Complaint contains legal conclusions to which no response is required. To the extent that a response is required, StrategIQ denies the allegations set forth in Paragraph 27.

28. Commission was due to Plaintiff by Defendant under the Independent Contractor Sales Agreement and/or because of the past practice used by Defendant.

**ANSWER:** Paragraph 28 of the Complaint contains legal conclusions to which no response is required. To the extent that a response is required, StrategIQ denies the allegations set forth in Paragraph 28.

128820072.3

29.     Defendant violated the Sales Representative Act because it failed, and continues to fail, to pay Plaintiff commissions due to her under the terms prescribed by the Act.

**ANSWER:** StrategIQ denies the allegations set forth in Paragraph 29 of the Complaint.

30.     Plaintiff has been damaged as a result of Defendant's violation of the Sales Representative Act.

**ANSWER:** StrategIQ denies the allegations set forth in Paragraph 30 of the Complaint.

31.     Pursuant to the Sales Representative Act, Defendant shall be liable to Plaintiff for three times the amount of commissions owed to Plaintiff.

**ANSWER:** StrategIQ denies the allegations set forth in Paragraph 31 of the Complaint.

32.     Pursuant to the Sales Representative Act, Defendant is liable for reasonable attorneys' fees and court costs in this action.

**ANSWER:** StrategIQ denies the allegations set forth in Paragraph 32 of the Complaint.

WHEREFORE, Plaintiff respectfully requests that this Court:

      a.     enter judgment in favor of Plaintiff and against Defendant;

      b.     award Plaintiff compensatory damages, plus accrued interest;

      c.     award Plaintiff the mandatory trebling of her unpaid commissions pursuant to the Act;

      d.     award Plaintiff her attorneys' fees, costs, and expenses pursuant to the Act; and

**ANSWER:** StrategIQ denies Tenan is entitled to the relief requested in this paragraph.

## STRATEGIQ'S AFFIRMATIVE DEFENSES TO TENAN'S CLAIMS

In accordance with Rule 8 of the Federal Rules of Civil Procedure, and based on the knowledge and information available to date, StrategIQ asserts the following defenses and reserves the right to assert other defenses or claims when and if they become appropriate and/or available in this action. StrategIQ does not admit that it has the burden of proof on any of the defenses alleged herein. StrategIQ designates all denials to the claims set forth above as defenses if necessary for its full defense of this matter, and restates and realleges the same in support of its

- 8 -

Affirmative Defenses. StrategIQ further designates the allegations set forth in support of its Counterclaims below if necessary for its full defense of this matter, and restates and realleges the same in support of its Affirmative Defenses.

### First Defense

1.     Tenan's Complaint in whole or in part fails to state a claim upon which relief may be granted because, among other things, all of StrategIQ's actions affecting Tenan's terms and conditions of employment were based on legitimate reasons and in accordance with the operative agreements between the parties.

### Second Defense

2.     Tenan's claims for damages are barred to the extent she mitigated her damages and/or failed to mitigate her alleged damages, and her recovery, if any, must be reduced accordingly.

### Third Defense

3.     Tenan's damages, if any, are barred in whole or in part because StrategIQ has already paid Tenan in accordance with the operative agreements between the parties, and because Tenan was terminated for cause pursuant to the agreements.

### Fourth Defense

4.     Tenan's claims are barred in whole or in part because Tenan is in breach of her agreement with StrategIQ.

### Fifth Defense

5.     Tenan's damages, if any, are limited or barred due to after-acquired evidence of Tenan's wrongdoing warranting her termination.

**Sixth Defense**

6.     Tenan's claim for exemplary, punitive, and/or treble damages is barred because such damages are not available in a breach of contract action, because Tenan failed to allege acts or omissions by StrategIQ that would justify such damages, and because StrategIQ did not willfully or wantonly breach the Illinois Sales Representative Act or another statute which allows for such damages.

**Seventh Defense**

7.     Tenan's claims are barred because any damages allegedly suffered by Tenan were the result of her own actions or inactions, omissions, and/or negligence, and no act or omission of StrategIQ was the proximate cause of the harm of which Tenan complains.

**Eighth Defense**

8.     Tenan's claims are barred in whole or in part based on the doctrine of unclean hands.

**Ninth Defense**

9.     To the extent Tenan has damages, such damages are barred or limited based on the doctrine of unjust enrichment, set-off, and/or accord and satisfaction with respect to any amounts Tenan owes to StrategIQ, and amounts Tenan received from StrategIQ and/or as the result of her breach of her obligations or other wrongful actions.

**Tenth Defense**

10.     Tenan, because of her conduct, is estopped from asserting any cause of action against StrategIQ.

**Eleventh Defense**

11.     Any recovery on Tenan's Complaint, or any purported cause of action alleged therein, are barred to the extent the contract required StrategIQ to perform an illegal act or to violate a law.

**Twelfth Defense**

12.     Tenan's claims are barred, in whole or in part, because Tenan, by her acts, conduct and/or omissions has ratified the acts, conduct and/or omissions, if any, of StrategIQ.

**Thirteenth Defense**

13.     Tenan has delayed inexcusably and unreasonably in the filing of this action causing substantial prejudice to StrategIQ, and thus, Tenan's claims are barred by the equitable doctrine of laches.

**Fourteenth Defense**

14.     Although StrategIQ does not admit such herein, any failure of StrategIQ to perform the conditions of the purported contract resulted from Tenan's failure to perform and such performance by Tenan was a condition precedent to or concurrent with performance by StrategIQ.

**Fifteenth Defense**

15.     Tenan, and each alleged cause of action in the Complaint, are barred in whole or in part by the applicable statute of limitations.

StrategIQ pleads any and all affirmative defenses set forth in the Federal Rules of Civil Procedure which are supported by the facts, whether known or unknown at this time, and specifically pleads the defenses of Tenan's breach of contract, Tenan's breach of fiduciary

duties, and all defenses available under the Illinois Sales Representative Act and applicable law. StrategIQ reserves the right to assert additional affirmative defenses as revealed by discovery.

### STRATEGIQ'S COUNTERCLAIMS FOR INJUNCTIVE AND OTHER RELIEF

StrategIQ, by and through its undersigned attorneys, brings these Counterclaims against Tenan, and alleges as follows:

### INTRODUCTION

1.      StrategIQ recently learned that Tenan, while employed by StrategIQ, used and/or disclosed StrategIQ's confidential information for her own monetary gain and to further her own business and relationship with companies that offer services in competition with StrategIQ.

2.      Further, unbeknownst to StrategIQ, and also while employed by StrategIQ, Tenan established a referral fee arrangement with a shipping carrier whereby she would be compensated if she successfully promoted the carrier's shipping services. This conduct violated Tenan's fiduciary duties because it was of critical importance that StrategIQ employees remain neutral when providing pricing analysis for their customers and negotiating with carriers and not be financially motivated to promote one carrier over another. That is the only way a customer knows that an analysis and recommendation provided by StrategIQ is in the customer's best interest.

3.      In addition, after Tenan was terminated, Tenan continued to breach her contractual obligations to StrategIQ, by using its confidential information, and unlawfully soliciting StrategIQ's customers to terminate their relationship with StrategIQ in contravention of her non-solicitation obligations to StrategIQ.

- 12 -

128820072.3

4.      StrategIQ therefore brings these counterclaims to enjoin Tenan from further breaching her contractual confidentiality and non-solicitation obligations and fiduciary duties to StrategIQ and from tortiously interfering with StrategIQ's contractual and business relationships, and for damages in relation to the same.

## PARTIES

5.      StrategIQ is a limited liability company organized under the laws of Illinois with its principal place of business and headquarters at 549 W. Randolph Street, Chicago, Illinois 60661.

6.      Tenan was employed as a salesperson for StrategIQ from October 2008 to November 2013.

7.      Upon information and belief, Tenan has resided in California throughout her employment with StrategIQ and currently resides in Marina del Rey, California.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction over this action because the employment agreements require all actions arising under them to be brought in Illinois, pursuant to a mandatory forum selection clause.

9.      Venue is proper in Cook County, Illinois because the employment agreements require that disputes be brought in this county.

10.      The employment agreements require that Illinois law govern any dispute arising under them.

11.      StrategIQ is headquartered in Cook County, Illinois.

12.      Tenan's breach of the employment agreements damaged StrategIQ in Illinois.

128820072.3

## STATEMENT OF FACTS

**A.      StrategIQ is a Worldwide Leader in Shipping Expense Management and
Supporting Customers in Analysis on Shipping Rates with Parcel Carriers and
Neutral Carrier Recommendation and Selection.**

13.      StrategIQ was founded in 2000 as IntraVex, L.L.C. by then—and current—CEO

Jonathan Shaver. IntraVex, LLC changed its name to StrategIQ Commerce, L.L.C. in April

2013.

14.      StrategIQ develops cutting-edge software and programs that allow companies to

analyze previously scattered data related to small-parcel shipping and understand how they can

be more efficient in shipping their goods to consumers. StrategIQ thus helps companies improve

on a consumer's "post-sale" experience (*i.e.* from the moment a consumer purchases a product to

the moment it is delivered to his or her home or office). These services will collectively be

known as the "Shipping Expense Management Services."

15.      StrategIQ also supports customers in their negotiations with transportation

carriers (such as DHL Express, FedEx, etc.) to find the lowest cost solution for the customers'

shipping needs.

16.      It is of critical importance that StrategIQ and its employees remain neutral in this

process and not be financially motivated to choose one carrier over another. This is necessary so

that customers know that an analysis and recommendation provided by StrategIQ is in the

customer's best interest.

17.      Despite being a small and relatively new company, StrategIQ has revolutionized

Shipping Expense Management and now services some of the most recognized retail shopping

brands in the world.

**B.      StrategIQ Hired Tenan as a Sales Representative. It then Provided Her With Access to Its Confidential and Proprietary Information.**

18.      StrategIQ hired Tenan on October 30, 2008 as a sales representative pursuant to an employment agreement (hereinafter the "2008 Agreement").

19.      As part of her employment, Tenan was responsible for servicing certain of StrategIQ's customers (sometimes identified as the "Client List Customers") and identifying and pursuing other business opportunities and potential customers for StrategIQ.

20.      As an employee of StrategIQ, Tenan had access to StrategIQ's confidential and proprietary information, including, but not limited to, customer lists, estimates and bids for customer projects, the services StrategIQ could and did provide to its customers, the fees StrategIQ charged for its services, analytic reports for said customers, and other proprietary documents that allowed StrategIQ to become a national leader in Shipping Expense Management Services.

21.      In addition, Tenan had access to sensitive customer data, including vendor pricing and ordering information, customer ordering and pricing information, analyses of various customer efficiencies, the methods implemented by StrategIQ to improve such Shipping Expense Management Services, and StrategIQ customer preferences.

22.      Throughout her tenure at StrategIQ, Tenan repeatedly reaffirmed the confidential and sensitive nature of the information she was dealing with on behalf of StrategIQ, including by affirming such obligations in writing, as outlined herein.

23.      StrategIQ took numerous measures to ensure that its customer data was protected from data breaches and computer hackers, including employing encryption methods and other data security protocols. StrategIQ also informed its employees about the sensitive nature of the information that the employees would have access to during their tenure with StrategIQ by

- 15 -

issuing policies, training them on those policies and providing periodic reminders about the sensitive nature of StrategIQ's business information.

24.    StrategIQ employees were also required to use StrategIQ-supplied laptops, which employed data security protocols and software, to minimize the threat of data breaches and the loss of confidential and proprietary information.

**C.    The Parties Executed an Amended Employment Agreement in November 2012.**

25.    In mid-2012, Tenan began disputing her rights and obligations under the 2008 Agreement.

26.    On November 2, 2012, for full and sufficient consideration, the parties entered into the Amended Employment Agreement ("Amended Employment Agreement").

27.    The Amended Employment Agreement required Tenan to service substantially the same StrategIQ customers that were identified in the 2008 Agreement. It also required her to identify other business opportunities and pursue other prospective customers on behalf of, and at the behest of, StrategIQ.

28.    A copy of the Amended Employment Agreement is attached as <u>Exhibit A</u>.

**D.    The Amended Employment Agreement Broadly Defined Confidential Information and Imposed Stringent Non-Disclosure Requirements.**

29.    The Amended Employment Agreement defines "Confidential Information" broadly to encompass all non-public information an employee would receive in the course of their duties at StrategIQ, including customer pricing, the business of any of StrategIQ's customers or vendors, and service offerings. In this regard, the relevant provision of the agreements provides:

> [A]ny and all confidential, proprietary or trade secret information, whether disclosed, directly or indirectly, verbally, in writing or by any other means in tangible or intangible form, including that which is conceived or developed by Employee in the course and scope of her employment, applicable to or in any way

related to: (i) the present or future business of the Company or any of its Affiliates (as defined below); (ii) the research and development of the Company or any of its Affiliates; or (iii) the business of any client or vendor of the Company or any of its Affiliates. Such Confidential Information includes the following property or information of the Company and its Affiliates, by way of example and without limitation, trade secrets, processes, formulas, data, program documentation, customer lists, designs, drawings, algorithms, source code, object code, know-how, improvements, inventions, licenses, techniques, plans or strategies for marketing, development and pricing, business plans, financial statements, profit margins and all confidential information concerning existing or potential clients, suppliers or vendors. Confidential Information of the Company also means all similar information disclosed to the Company by third parties which is subject to confidentiality obligations. The term "Affiliates" means: (i) all individuals or entities controlling, controlled by or under common control with, the Company; (ii) all entities in which the Company owns an equity interest; and (iii) all predecessors, successors and assigns of those Affiliates identified in (i) and (ii).

Ex. A, ¶ 6(b).

30.     By signing the Amended Employment Agreement, Tenan agreed that StrategIQ's Confidential Information is a protectable business interest, and that she was not to disclose it under any circumstances during or after employment, except as required during the course of employment to perform her duties as an employee of StrategIQ. In this regard, the relevant provisions of the agreement provides:

Employee acknowledges that the "Confidential Information" (as defined [above]) constitutes a protectable business interest of the Company, and covenants and agrees that at all times during the period of Employee's employment, and at all times after termination of such employment, Employee will not, directly or indirectly, disclose, furnish, make available or utilize any Confidential Information other than in the course of performing duties as an employee of the Company. Employee will abide by Company policies and rules as may be established from time to time by it for the protection of its Confidential Information. Employee agrees that in the course of employment with the Company, Employee will not bring to the Company's offices nor use, disclose to the Company, or induce the Company to use, any confidential information or documents belonging to others. Employee's obligations under this section with respect to particular Confidential Information will survive expiration or termination of this Amended Employment Agreement, and Employee's employment with the Company, and will terminate only at such time (if any) as the Confidential Information in question becomes generally known to the public

other than through a breach of Employee's obligations under this Amended Employment Agreement.

Ex. A, ¶ 6(a).

31.     This duty not to disclose Confidential Information was to survive the termination

of the Amended Employment Agreement for whatever reason. *See id*.

32.     Tenan also agreed to immediately return all Confidential Information upon her

termination as set forth in the paragraph that appears below:

> Employee further agrees that upon termination of Employee's employment with the Company (including termination from the Sales Agent position), for whatever reason, Employee will surrender to the Company all Confidential Information and all of the property, client lists, notes, manuals, reports, documents and other things in Employee's possession, including copies or computerized records thereof, which relate directly or indirectly to Confidential Information.

Ex. A, ¶ 6(c).

33.     The Amended Employment Agreement also contains a restrictive covenant that

prevents Tenan from using StrategIQ's Confidential Information, or other unlawful means, to

solicit customers of StrategIQ. That provision appears below:

> 9. **<u>Nonsolicitation of Clients</u>**: Employee agrees that during the Term and for a period one year thereafter, Employee will not, individually or as an agent or employee of or as a consultant for or otherwise on behalf of or in conjunction with any person, firm, association, partnership, corporation, limited liability company, or other entity, directly or indirectly, utilize the Company's Confidential Information or any other unlawful means to solicit any of the Company's or its Affiliates' clients or customers at any time during Employee's employment with the Company or during the term of the covenant in this Section 9.

Ex. A, ¶ 9.

34.     Tenan agreed that StrategIQ could terminate her for cause under the Amended

Employment Agreement. Ex. A, ¶ 11(b).

- 18 -

35.     According to the Amended Employment Agreement, cause can be established when, for example, Tenan fails to perform her duties, commits material theft, willfully misuses StrategIQ's property, or if she breached her duty of loyalty to StrategIQ. The relevant provision on this point provides:

> (ii) substantial and repeated failure to perform material duties as reasonably directed by the Company which is not cured to the Company's reasonable satisfaction within 30 days after written notice thereof to Employee, and delivered pursuant to paragraph 20 herein;
> ….
> (v) material theft or willful misuse of Company property;
> ….
> (vi) breaching Employee's duty of loyalty to the Company, including by engaging in any activity during the term of this Amended Employment Agreement that is competitive with the Company's interest, except as permitted herein.

*Id*.

36.     Tenan further agreed that the obligations relating to StrategIQ's Confidential Information and her non-solicitation of StrategIQ's customers were necessary due to the nature of StrategIQ's business, and that money damages alone could not compensate StrategIQ for potential breaches, thereby necessitating injunctive relief and/or specific performance. The Amended Employment Agreement provides, on these issues, as follows:

> 10. **Remedies**: Employee expressly agrees and acknowledges that the covenants set forth in Sections 6, 7, 8 and 9 are necessary for the Company's and its Affiliates' protection because of the nature and scope of their business and Employee's position with the Company. Further, Employee acknowledges that, in the event of Employee's breach of any of the covenants, money damages will not sufficiently compensate the Company and its Affiliates for injury caused thereby, and Employee accordingly agrees that in addition to such money damages, Employee may be restrained and enjoined from any continuing breach of such covenants without any bond or other security being required. Employee acknowledges that any breach of the foregoing covenants would result in irreparable damage to the Company and its Affiliates. Employee acknowledges that the remedy at law for any breach or threatened breach of Section 6, 7, 8 or 9 will be inadequate and, accordingly, that the Company and its Affiliates shall, in addition to all other available remedies (including seeking such damages as they can show they have sustained by reason of such breach), be entitled to injunctive relief or specific performance. The 1 year period set forth in Sections 8 & 9 above

- 19 -

shall be tolled during any period in which Employee is in breach of those provisions. Notwithstanding the above, should any court determine that any covenants in this Amended Employment Agreement are unreasonable as to duration, scope, or territory, the covenants shall be enforceable as provided herein with respect to the maximum duration, scope and territory as the court determines to be reasonable.

37.     The Amended Employment Agreement permitted Tenan to enter into the Independent Contractor and Sales Agent Agreement ("Sales Agent Agreement") whereby she could become an independent contractor, by exercising her right consistent with Exhibit C to the Amended Employment Agreement. *See* Ex. A, at Ex. C.

**E.      Tenan Attempted to Exercise The Sales Agent Agreement.**

38.     On or about May 15, 2013, Tenan purported to exercise the Sales Agent Agreement, which was attached as an exhibit to the Amended Employment Agreement.

39.     The Sales Agent Agreement, like the Amended Employment Agreement (and the 2008 Agreement) required Tenan to service the same StrategIQ customers, identify other business opportunities for StrategIQ, and pursue other prospective customers for StrategIQ.

40.     The Sales Agent Agreement required Tenan to serve as the primary point of contact for all of the sales and relationship needs, calls and meetings with the customers identified therein, including being as follows:

> Tenan is responsible for the customers identified on the Client List (identified in Section 4(a) below and defined as the "Client List"); such customers are referred herein as "Client List Customers." Tenan will serve as the primary point of contact for Client List Customers for all sales and relationship needs, call and meet with each Client List Customer (minimum required frequency set forth in Exhibit A attached hereto) to ensure the satisfaction of each Client List Customer in order to promote retention of the Client List Customers; identify any potential growth opportunities associated with Client List Customers; and report to the Company such activities on the monthly scheduled calls. Tenan will regularly communicate with and respond promptly to Client List Customer inquiries, requests, needs, issues and problems, and will work with the Company-assigned account manager for clients need review, resolution and to ensure delivery of high level of customer service. Tenan will

- 20 -

> prepare formal customer reviews and sales presentations of contracted services to Client List Customers (minimum frequency per client set forth in Exhibit A). Tenan will participate in all active renewals of which the Company notifies her or of which she is aware. Tenan will remain current on Client List contracted services and specific Company deliverables, Company solutions and industry trends identified by Company and all of which will be provided by the Company in on-line training that Tenan will participate in twice per year, at dates and times agreed upon by both parties reasonable consideration given to both parties' respective schedules. Tenan will update Company with a monthly status report (in form attached hereto as Exhibit B).

Ex. A, at Ex. C ¶ 3(a).

41.     Tenan was also required to "regularly communicate with and respond promptly to [] Customer inquiries, requests, needs, issues and problems, and [] work with the Company-assigned account manager for clients need review, resolution and to ensure delivery of high level of customer service." *Id*.

42.     The Sales Agent Agreement also required Tenan to "remain current on Client List contracted services." *Id*.

43.     Tenan was also required to report to an assigned manager at StrategIQ per the following provision of the Sales Agent Agreement:

> The Sales Agent Position will report to an assigned management personal within the Company. The Company will respond to any client list inquiries, requests, needs, issues and problems identified by Tenan and communicated to Company representatives promptly by providing necessary service and support. Company will provide an operational "account manager" to support Tenan in delivery of ongoing contracted services.

*Id*.

44.     Tenan's obligations in the Sales Agent Agreement in relation to Confidential Information were identical to the obligations identified in the Amended Employment Agreement as outlined in Paragraphs 29-36 *supra*.

45.     Tenan's non-solicitation obligations in the Sales Agent Agreement were identical to the non-solicit obligations identified in the Amended Employment Agreement as outlined in Paragraphs 29-36 *supra*.

46.     After receiving Tenan's request to exercise the Sales Agent Agreement, StrategIQ expressed concern about the possibility of her switch to independent contractor status running afoul of applicable employment laws in California.

47.     The parties thereafter began to explore how to best rectify this situation.

48.     Notwithstanding StrategIQ's concerns and the parties' continuing discussion with respect to Tenan's employment, StrategIQ agreed to allow Tenan to pursue other *non-competitive* business activities while still employed by StrategIQ, so long as those activities did not interfere with Tenan's duties and obligations to StrategIQ.

**F.     Tenan Breached Her Contractual Obligations and Fiduciary Duties to StrategIQ.**

49.     However, at around the same time Tenan purported to exercise the Sales Agent Agreement, Tenan began routinely, and purposefully, neglecting to carry out her contractual and employment obligations to StrategIQ.

50.     As an example, Tenan routinely failed to "*regularly* communicate with and respond promptly to Client List Customer inquiries, requests, needs, issues and problems, and [] work with the Company-assigned account manager for clients need, review, resolution and to ensure delivery of a high-level of customer service" as required by both agreements and her duties to StrategIQ. Ex. A, at Ex. C ¶ 3(a) (emphasis added).

51.     Indeed, Tenan confirmed that she would not participate in weekly calls, even though such calls were required in order to address customer requests, needs, issues and problems to ensure a high-level of customer service. Tenan's failures to partake in these mandatory weekly calls violated her duties and responsibilities to StrategIQ.

- 22 -

52.     Tenan also scheduled customer calls at times that she knew she would travel, which rendered her inattentive to the needs of StrategIQ's customers.

53.     On July 19, 2013, Bill Bearden, the Client Services Manager at StrategIQ, reminded Tenan via email of her obligation to host and lead customer calls.

54.     On or about July 25, 2013, StrategIQ's counsel emailed Tenan's counsel to warn Tenan against improperly using StrategIQ's Confidential Information, and to refrain from interfering with StrategIQ's business relationships.

55.     In that communication, StrategIQ required Tenan to provide copies of all correspondence that she had with StrategIQ's customers unrelated to StrategIQ's services and products. Tenan never complied with StrategIQ's demand.

56.     Tenan also repeatedly refused to use a StrategIQ-supplied laptop for company matters, opting instead, to use her personal computer. The use of the StrategIQ-supplied laptop was to ensure the integrity of StrategIQ Confidential Information and that of its customers, as various software protocols were enabled on StrategIQ computers (as discussed *supra*).

57.     On August 9, 2013, Tenan emailed StrategIQ's customer services staff informing them that she was now an independent contractor and would not participate on weekly customer calls, despite StrategIQ's repeated requests that Tenan participate on such calls.

58.     Such calls were not only contractually required, but Tenan could not properly perform her duties to StrategIQ without participating in the customer calls.

59.     When Tenan did participate on calls, Tenan purposefully displayed a severe lack of professionalism and made derogatory remarks about StrategIQ, in a seeming attempt to sabotage StrategIQ's customer relationships.

60.     For example, on one customer call, Tenan spoke pejoratively about another StrategIQ employee and the company's services, and then abruptly terminated the call, hanging up on the customer and other participants.

61.     Tenan thereafter continued to engage in actions that were detrimental to StrategIQ's business and customers, despite being told that such actions needed to cease.

62.     Therefore, on November 15, 2013, Tenan was terminated for cause.

**G.     StrategIQ Later Discovered That, While Still Employed by StrategIQ, Tenan Had Formed Her Own Consulting Company, Engaged in Self-Dealing, Used StrategIQ's Confidential Information For Her Own Benefit and To The Company's Detriment, And Engaged In Other Misconduct In Breach of Her Contractual and Fiduciary Duties To StrategIQ.**

63.     In August 2013 (before being terminated), Tenan filed suit against StrategIQ in Cook County, Illinois, alleging, among other things, a breach of the Amended Employment Agreement.

64.     In relation to that action, StrategIQ was forced to file an emergency motion to prevent Tenan from destroying potentially relevant evidence after Tenan informed StrategIQ that she so intended.

65.     As part of the documents Tenan was ordered to turn over pursuant to the Court's ruling on StrategIQ's motion, Tenan produced contents from her Gmail inbox which contained substantial evidence of wrongdoing by Tenan while employed by StrategIQ.

66.     As an initial matter, StrategIQ learned that Tenan had formed her own consulting firm, LST Consulting, Inc., while working for StrategIQ, through which she competed with StrategIQ and for which she used StrategIQ's confidential information.

67.     As additional examples of the wrongdoing in which Tenan participated during and after her employment with StrategIQ, StrategIQ learned that Tenan:

(i)     *Tenan Engaged in Unfair Competition on Behalf of Narvar, a Company that Offers Services Related to StrategIQ.*

68.     In an email dated July 6, 2013 (while still employed by StrategIQ), Tenan is introduced to a company called Narvar as someone who has "cornered the market on supply chain services" and who has "begun to represent other supply chain service companies."

69.     StrategIQ is unclear who these other supply chain service companies are but such representation of StrategIQ's competitors would constitute a breach of Tenan's duty of good faith and loyalty to StrategIQ.

70.     On or about August 15, 2013—also while still working with StrategIQ—Tenan entered into an employment agreement with Narvar, which, upon information and belief, offers services related to StrategIQ.

71.     Upon information and belief, from August 2014 onwards (based on Tenan's own to-do diary), Tenan was interfering with StrategIQ's business operations, including on behalf of Narvar.

72.     On or about September 10, 2013, Tenan also assisted in preparing a PowerPoint presentation on behalf of Narvar, with the intent to interfere with StrategIQ's business.

73.     In or around September, Tenan created a document of all of her customer contacts (that she built over her years of employment at StrategIQ) and titled it "Narvar #3 List."

(ii)    *Tenan Engaged in a Referral Fee Arrangement with a Carrier, Including by Using Confidential Information of StrategIQ, Which is Prohibited Under the Agreement. Her Referral Fee Arrangement also conflicted with her duties to StrategIQ.*

74.     As part of its business model, StrategIQ supports its customers as they negotiate lower shipping rates with their pre-selected carriers.

75.     Upon information and belief, Tenan had established a referral fee arrangement with a shipping carrier whereby she would be compensated if she successfully promoted the carrier's shipping services (hereinafter the "referral carrier").

76.     Motivated by a financial incentive, Tenan forwarded the Confidential Information of StrategIQ to her referral carrier.

77.     Tenan did not have permission or authority to disclose StrategIQ's Confidential Information, or to otherwise enter into a financial arrangement with the referral carrier.

78.     Indeed, had StrategIQ known that Tenan intended to enter into such a relationship with the referral carrier, StrategIQ would have strictly prohibited her from doing so.

*(iii)    Tenan Continued Conversations with a StrategIQ Customer after Termination from StrategIQ and that Customer Eventually Terminated StrategIQ's Services.*

79.     On or about November 17, 2013 (two days after termination), Tenan emailed a StrategIQ customer informing him that her StrategIQ email address is no longer active and that she can be contacted at her new email address at LST Consulting.

80.     On November 19, 2013, Tenan emailed another individual at that StrategIQ customer informing him of the same. Tenan further invited him to contact her at her personal number to discuss these recent developments.

81.     Upon information and belief, on or about December 4, 2013, Tenan held a conference call with that StrategIQ customer.

82.     Upon information and belief, on or about December 11, 2013, Tenan had another conference call with that customer.

83.     On December 31, 2013, the customer provided StrategIQ with a 30-day termination notice and stopped using StrategIQ's services in early 2014.

## COUNTERCLAIM I
### BREACH OF AMENDED EMPLOYMENT AGREEMENT/SALES AGENT AGREEMENT − UNAUTHORIZED USE OF STRATEGIQ'S CONFIDENTIAL INFORMATION

84.     StrategIQ repeats and realleges each and every allegation in the preceding paragraphs as if fully set forth herein.

85.     Since November 2, 2012 to November 15, 2013, the parties were operating pursuant to the Amended Employment Agreement and/or the Sales Agent Agreement.

86.     Under both agreements, Tenan was required to not disclose StrategIQ's Confidential Information without prior approval from StrategIQ.

87.     Tenan breached the agreements by providing Confidential Information to Narvar and other potential competitors.

88.     Tenan also breached the agreements when she forwarded StrategIQ's Confidential Information to the referral carrier.

89.     Upon information and belief, Tenan has also revealed and/or used StrategIQ's Confidential Information in other instances, including during the course of providing services through her consulting company, LST Consulting.

90.     Tenan's disclosure of said Confidential Information was willful and purposeful, and without prior approval or authorization from StrategIQ.

91.     As a proximate result of Tenan's breach, StrategIQ suffered damages in an amount to be determined at trial.

92.     If Tenan is found to be using Confidential Information, injunctive relief is also necessary because StrategIQ will continue to be damaged without said relief.

128820072.3

## <u>COUNTERCLAIM II</u>
**BREACH OF AMENDED EMPLOYMENT AGREEMENT/SALES AGENT AGREEMENT − FAILURE TO RETURN STRATEGIQ'S CONFIDENTIAL INFORMATION**

93.     StrategIQ repeats and realleges each and every allegation in the preceding paragraphs as if fully set forth herein.

94.     Since November 2, 2012 to November 15, 2013, the parties were operating pursuant to the Amended Employment Agreement and/or the Sales Agent Agreement.

95.     Under both agreements, Tenan was required to return StrategIQ's Confidential Information upon termination.

96.     Tenan also failed to comply with confidentiality protocols to protect information of StrategIQ, despite repeated demands from StrategIQ.

97.     Tenan failed to do so upon her termination, thereby requiring StrategIQ to file an Emergency Motion and incur legal and other costs to gain access to Tenan's email inboxes that contained Confidential Information.

98.     Upon information and belief, Tenan has Confidential Information within email inboxes and files that were not disclosed to StrategIQ in the prior litigation, most notably, emails in her LST Consulting inbox.

99.     Tenan's failure to return this information herself will require StrategIQ to incur additional legal expense in determining what Confidential Information exists and to identify which files and folders can then be deleted permanently from Tenan's inboxes and devices.

100.     Tenan's retention of Confidential Information was done willfully and without authorization from StrategIQ.

101.     As a proximate result of Tenan's breach, StrategIQ suffered damages in an amount to be determined at trial.

102.    If Tenan is found to have retained Confidential Information (either in her LST Consulting inbox or in any other form), injunctive relief is also necessary because StrategIQ will continue to be damaged without said relief.

## COUNTERCLAIM III
### BREACH OF AMENDED EMPLOYMENT AGREEMENT/SALES AGENT AGREEMENT − BREACH OF NON-SOLICITATION PROVISION

103.    StrategIQ repeats and realleges each and every allegation in the preceding paragraphs as if fully set forth herein.

104.    Since November 2, 2012 to November 15, 2013, the parties were operating pursuant to the Amended Employment Agreement and/or the Sales Agent Agreement.

105.    Under both agreements, Tenan was required to not use or disclose StrategIQ's Confidential Information, or use other unlawful means to solicit StrategIQ customers.

106.    Upon information and belief, Tenan breached the agreements when she used Confidential Information and other unlawful means after her termination to induce a StrategIQ customer to terminate its relationship with StrategIQ and utilize the services of a competitor.

107.    As a proximate result of Tenan's breaches, StrategIQ suffered damages in an amount to be determined at trial.

108.    If Tenan is found to have used or disclosed Confidential Information, or used other unlawful means to solicit StrategIQ customers, injunctive relief is also necessary because StrategIQ will continue to be damaged without said relief.

## COUNTERCLAIM IV
### BREACH OF FIDUCIARY DUTIES

109.    StrategIQ repeats and realleges each and every allegation in the preceding paragraphs as if fully set forth herein.

128820072.3

110.     Since November 2, 2012 to November 15, 2013, the parties were operating pursuant to the Amended Employment Agreement and/or the Sales Agent Agreement.

111.     Under both agreements, Tenan was obligated to operate in good faith and also owed a duty of loyalty to StrategIQ.

112.     Tenan breached these duties when she engaged in competition with StrategIQ on behalf of Narvar.

113.     Tenan also breached her duties when she entered into a referral fee arrangement with the referral carrier. She was thereafter financially motivated to encourage StrategIQ's customers to user her referral carrier for parcel shipping services.

114.     Tenan knew that StrategIQ required her to act in a neutral manner when assisting customers determine the lowest shipping cost, and therefore, a referral fee arrangement with a carrier would have destroyed StrategIQ's reputation in the industry.

115.     Upon information and belief, Tenan engaged in other conduct on behalf of the referral carrier that violated her fiduciary duties to StrategIQ.

116.     As a proximate result of Tenan's breach of her duties, StrategIQ suffered damages in an amount to be determined at trial.

## COUNTERCLAIM V
## TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

117.     StrategIQ repeats and realleges each and every allegation in the preceding paragraphs as if fully set forth herein.

118.     StrategIQ had a reasonable expectation of entering into a valid business relationship with its customer prior to Tenan's unlawful use of Confidential Information and/or other unlawful means to communicate with that customer.

119. Tenan acted intentionally and without justification when she communicated with said customer after her termination in or around December 2013.

120. As a result of Tenan's tortious interference, that customer terminated its account with StrategIQ in January 2014.

121. As a proximate result of Tenan's intentional and unjustified tortious interference, StrategIQ suffered damages in an amount to be determined at trial.

### COUNTERCLAIM VI
### UNJUST ENRICHMENT (AS AN ALTERNATIVE TO CONTRACTUAL COUNTERCLAIMS)

122. StrategIQ repeats and realleges each and every allegation in the preceding paragraphs as if fully set forth herein.

123. Tenan has received the benefit of StrategIQ's Confidential Information.

124. Tenan's retention and use of this Confidential Information was to StrategIQ's detriment.

125. Tenan was receiving commissions and/or a salary from StrategIQ while unjustly enriching herself through her unlawful use and distribution of StrategIQ's Confidential Information and breaches of her fiduciary duty.

126. Upon information and belief, Tenan also received referral fees or other benefits from StrategIQ's competitors in violation of her obligations and duties under the Amended Employment Agreement and her fiduciary duties.

127. Even if not referral fees, Tenan was unjustly enriched because, among other things, Tenan was able to build goodwill for herself and StrategIQ's competitors at StrategIQ's expense.

128. Tenan's retention of these benefits and referral fees would be unjust and unfair.

128820072.3

## COUNTERCLAIM VII
## INJUNCTIVE RELIEF FOR TOLLED PERIOD OF NON-SOLICITATION

129.    StrategIQ repeats and realleges each and every allegation in the preceding paragraphs as if fully set forth herein.

130.    Since November 2, 2012 to November 15, 2013, the parties were operating pursuant to the Amended Employment Agreement and/or the Sales Agent Agreement.

131.    Under both agreements, Tenan was prohibited from using Confidential Information or other unlawful means to solicit customers for a period of one year after termination.

132.    The agreements further provided that the one-year non-solicitation periods would be tolled during any period in which Tenan is in breach of that provision.

133.    Tenan further agreed that the obligations relating to Confidential Information and non-solicitation were necessary due to the nature of the business and that money damages alone could not compensate StrategIQ for potential breaches, thereby necessitating injunctive relief.

134.    Upon information and belief, Tenan began unlawfully competing with StrategIQ upon being terminated for cause, including, but not limited to, by providing services for Narvar.

135.    Tenan also unlawfully convinced a StrategIQ customer in December 2013 (approximately one month after termination) to terminate its relationship with StrategIQ, presumably, for one of StrategIQ's competitors.

136.    StrategIQ respectfully requests the Court enter an injunction preventing Tenan from abiding by her non-solicitation obligations with StrategIQ for any period of time found to have been tolled by her unlawful competition.

### PRAYER FOR RELIEF

128820072.3

WHEREFORE, StrategIQ respectfully requests the Court enter judgment in its favor as follows:

a.   Awarding compensatory damages in an amount to be determined at trial;

b.   Awarding StrategIQ its attorneys' fees;

c.   Enjoining Tenan from using or disclosing StrategIQ's Confidential Information and/or utilizing other unlawful means to compete with StrategIQ;

d.   Requiring Tenan to immediately return to StrategIQ any outstanding Confidential Information or company documents, whether in hard copy or electronic format;

e.   Declaring that Tenan breached her fiduciary duties to StrategIQ under the Amended Employment Agreement;

f.   Denying Tenan the benefit of any referral fees she obtained from StrategIQ's competitors by breaching the Amended Employment Agreement and/or her fiduciary duties;

g.   Granting Injunctive Relief to StrategIQ and against Tenan for any period of time of the one-year non-solicitation provision is deemed to have been tolled by Tenan's use of Confidential Information and/or other unlawful competition; and

h.   Granting such other and further relief, as provided for by contract, statute, and law, or as this Court deems just or proper.

128820072.3

Dated: December 14, 2015     Respectfully submitted,


            By: /s/ Jeannil D. Boji     
              One of Its Attorneys

Timothy J. Carroll
Jeannil D. Boji
Furqan Mohammed
Perkins Coie LLP
131 South Dearborn Street, Suite 1700
Chicago, IL 60603-5559
Tel: (312) 324-8400
Fax: (312) 324-9400
TCarroll@perkinscoie.com
JBoji@perkinscoie.com
FMohammed@perkinscoie.com

Jon G. Daryanani (*Pro Hac Vice Pending*)
Perkins Coie LLP
1888 Century Park East, Suite 1700
Los Angeles, CA 90067
Telephone: 310.788.3224
Facsimile: 310.788.3399
JDaryanani@perkinscoie.com

*Counsel for Defendant/Counterclaim Plaintiff*
*StrategIQ Commerce, LLC*

128820072.3

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing **Answer, Affirmative Defenses, and Counterclaims** was served upon all counsel of record this 14th day of December, 2015 via the Case Management/Electronic Case Filing ("CM/ECF") System.


_/s/ Jeannil D. Boji_

128820072.3